HOMER J. CLARK

*v.*

CHARLES R. TRUITT.

*Opinion filed December 18, 1899.*

1. SPECIFIC PERFORMANCE—*equity will not enforce contract to form partnership.* A contract to sell a half interest in a newspaper business, thus creating a partnership requiring personal skill and judgment, cannot be specifically enforced in equity, particularly where the contract fixes no time for the duration of the partnership and makes no provision as to the manner of conducting the business.

2. ACTIONS AND DEFENSES—*remedy for breach of contract to form a partnership is at law.* One who has fully performed his part of a contract to form a partnership requiring personal skill and judgment, while he cannot specifically enforce the contract may recover his damages in an action at law on the refusal of the other to perform. (*Wilson* v. *Campbell,* 5 Gilm. 383, explained.)

*Truitt* v. *Clark,* 81 Ill. App. 652, affirmed.

APPEAL from the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of Livingston county; the Hon. G. W. PATTON, Judge, presiding.

This was a bill in equity brought by Homer J. Clark, against Charles R. Truitt, to enforce the specific performance of a contract. It is alleged in the bill that prior to and up to the 8th day of July, 1897, the complainant,

Clark, owned and operated a newspaper plant at Pontiac, in Livingston county, known as the *Pontiac Sentinel;* that an agreement in writing was entered into between the complainant and Truitt, which, among other things, contained the following:

"This agreement, made and entered into this eighth day of July, A. D. 1897, between Homer J. Clark, party of the first part, and Charles R. Truitt, party of the second part:

"*Witnesseth:* That whereas the said Homer J. Clark, party of the first part, has this day, viz., the eighth day of July, 1897, by bill of sale duly executed, for a good, valid and sufficient consideration, the receipt whereof is hereby acknowledged and by said bill of sale stated, sold and conveyed unto the said Charles R. Truitt the *Pontiac Sentinel* plant and subscription list, he hereby agrees with the said Charles R. Truitt, party of the second part, to pay at once all claims, debts and demands of every kind which may be now, this day, viz., the eighth day of July, 1897, at the moment of transfer, upon or against said plant and property, at the same time, however, reserving unto himself all claims, debts, notes, accounts or dues of any or every description, except subscription accounts as shown upon the printed list and subscription list book, which are now or may be owing to said plant or property, or to himself as proprietor of the same, or to himself as successor to Lowry & Clark, to which said reserve and stipulation the said Charles R. Truitt hereby agrees.

"It is further agreed and understood, as a part of the consideration for the purchase of said newspaper plant and business, that the said Homer J. Clark shall not, and he hereby agrees not to, enter into nor connect himself with the newspaper publishing and printing business, as a competitor against said Truitt, in any manner whatsoever, either directly or indirectly, at the city of Pontiac, Livingston county, Illinois, or within said county of Livingston, for and during a period of ten (10) years from the eighth day of July, 1897, unless it be with or for the *Pontiac Sentinel.* It is further agreed that the said Charles R. Truitt shall use his personal influence and the influence of the *Sentinel* to secure the appointment of the said Homer J. Clark as postmaster at the city of Pontiac, Illinois, or any other appointive office under the present republican national administration, and to use his efforts to secure for the said Homer J. Clark railroad transportation on account of the *Sentinel* during one year from the date of this contract, said

Clark being allowed to retain pass on Toledo, Peoria and Western Railroad Company, and also to have such mileage on the Wabash and Illinois Central railroads as said Truitt can spare.

"It is further agreed and understood by and between the parties to this contract, as a part of the consideration of the sale of the *Pontiac Sentinel* plant to the said Charles R. Truitt, that the said Charles R. Truitt hereby gives unto the said Homer J. Clark an option for the purchase of a half interest in the *Pontiac Sentinel* business and plant, good will, subscription list, material and machinery this day conveyed by Clark to Truitt by bill of sale, the purchase price of said half interest to be three thousand one hundred and twenty-six dollars ($3126), terms to be eighteen hundred and seventy-four dollars cash, and the balance by the surrender to Truitt of the notes this day given to Clark by Truitt in purchase, for the sum of ($1251) twelve hundred fifty-one dollars: *Providing, however*, that the accrued interest on said notes shall be first applied upon the cash payment above stipulated, said option to hold good and open for the acception or rejection by the said Clark for and during the period ending July 8, 1898, next.

"Witness our hands and seals this 8th day of July, A. D. 1897.

HOMER J. CLARK,     [Seal.]
CHARLES R. TRUITT.     [Seal.]"

The bill further alleged that appellant had in all things conformed on his part to the letter and spirit of said contract, but that appellee had failed to do so; that on the 14th day of February, 1898, appellant desiring to avail himself of the option to purchase a one-half interest in said *Sentinel* plant, as provided in the contract, tendered the consideration therein provided for, but that appellee declined to receive the same or to transfer said one-half interest to appellant. The bill concludes with the prayer that appellee be decreed to accept the consideration tendered him, as provided by the terms of the contract, and transfer to appellant said one-half interest in said *Sentinel* plant, or, failing to do so, he be decreed to transfer the whole of said *Sentinel* plant back to appellant upon the surrender of the consideration received by appellant therefor. An injunction was also asked for to restrain appellee from disposing of or encumbering the

property described in the bill. An amendment to the bill was afterwards filed, setting up more fully the manner in which appellant had complied with the provisions of the contract.

The bill as amended was demurred to by appellee for want of equity, and the demurrer was overruled by the court. Appellee elected to stand by his demurrer, and thereupon the court entered a decree directing that appellee, within five days after the payment or tender to him by appellant of the consideration provided for by the contract, transfer to the latter one-half interest in the *Pontiac Sentinel* business plant, consisting of good will, subscription list, material and machinery; that appellee admit appellant to an equal partnership in the conduct of the business and profits of said *Pontiac Sentinel* newspaper and job printing plant, and that upon the failure of appellee to comply with the requirements of the decree, he be held in contempt of court. It was further decreed that the injunction which had been theretofore issued be continued pending the carrying into effect of the requirements of the decree. To reverse the decree appellee appealed to the Appellate Court, where the decree was reversed and the cause was remanded, with directions to sustain the demurrer, dissolve the injunction and dismiss the bill. To reverse the judgment of the Appellate Court the complainant in the bill appealed to this court.

A. C. BALL, for appellant:

Specific performance lies to enforce a contract for the sale of chattel interests where the property is shown to be of special value to the promisee or to be obtained only of the vendor; and this is particularly true in the case of shares in companies, stocks and interests not on the market and not having a recognized or ascertainable commercial value. *Hapgood* v. *Rosenstock*, 23 Fed. Rep. 86; *Buxton* v. *Lister*, 3 Atk. 383; *Hull* v. *Pitrat*, 45 Fed. Rep. 94;

*Reese's Appeal*, 122 Pa. St. 392; *Gardner* v. *Pullen*, 2 Vern. 393; *Adams* v. *Messinger*, 147 Mass. 185; *Equitable Gas Light Co.* v. *Coal Tar Co.* 63 Md. 285.

A court of equity will decree specific performance of agreements to enter into partnership or to execute articles of partnership, although after they are executed the court cannot compel the parties to act under them. *Saltenthwait* v. *Marshall*, 4 Del. Ch. 337; *Wilson* v. *Campbell*, 10 Ill. 383; *Anonymous*, 2 Ves. Sr. 629; *Buxton* v. *Lister*, 3 Atk. 383; Bates on Partnership, sec. 1013.

The court will decree specific performance of a contract to enter into a partnership even though it should be immediately dissolved, where it is necessary to invest the complainant with the legal rights or property for which he contracted. *Whitworth* v. *Harris*, 40 Miss. 483; *Birchet* v. *Balling*, 5 Munf. 442; Gow on Partnership, 110, 111; Story on Partnership, sec. 189, p. 286, notes; 17 Am. & Eng. Ency. of Law, 903, notes 1, 2, and cases cited.

H. H. McDOWELL, and A. C. NORTON, for appellee:

A court of equity is not bound to enforce every contract, although there may not be sufficient grounds for annulling it. *Leonard* v. *Crane*, 147 Ill. 52; *McDonald* v. *Minnick*, 147 id. 651; *Morse* v. *Seibold*, 147 id. 318; *Iglehart* v. *Vail*, 73 id. 63; *Gosse* v. *Jones*, 73 id. 508; *Railroad Co.* v. *Reno*, 113 id. 39; *Woods* v. *Evans*, 113 id. 186; *Alexander* v. *Hoffman*, 70 id. 114; *Chicago Gas Light Co.* v. *Town of Lake*, 130 id. 42; *Shaw* v. *Schoonover*, 130 id. 448; *Kimball* v. *Tooke*, 70 id. 553.

Specific performance will not be decreed if the execution of the contract would require the supervision of the court. *Rutland Marble Co.* v. *Ripley*, 10 Wall. 339; Beach on Modern Law of Contracts, sec. 1765; *Ikerd* v. *Beavers*, 106 Ind. 483; Pomeroy's Eq. Jur. sec. 1405, note 1; *Coal Co.* v. *Spellman*, 39 Ill. App. 630; *Harley* v. *Sanitary District*, 54 id. 337; *Railroad Co.* v. *Stone Co.* 39 N. E. Rep. 703; *Suburban Construction Co.* v. *Naugle*, 70 Ill. App. 384; *Wol-*

*lensak* v. *Briggs,* 20 id. 50; 119 Ill. 453; *Lawrence* v. *Gilroy,* 50 Ill. App. 310; *Welty* v. *Jacobs,* 64 id. 285; Fry on Specific Per. secs. 69, 91, note 1; *Kennicott* v. *Leavitt,* 37 Ill. App. 435; 22 Am. & Eng. Ency. of Law, 1002, and note; 5 Lawson on Rights, Remedies and Practice, sec. 2601; High on Injunctions, secs. 1112, 1107, 1109, 1120, 1162.

It is not possible to enforce a written contract which does not specify the time it is to continue. *Wollensak* v. *Briggs,* 119 Ill. 453; 20 Ill. App. 50; *Woods* v. *Evans,* 113 Ill. 186; *Chicago Gas Light Co.* v. *Town of Lake,* 130 id. 42; *Railroad Co.* v. *Stone Co.* 39 N. E. Rep. 703; *Gas Light Co.* v. *New Albany,* 39 id. 462; *Bowman* v. *Cunningham,* 78 Ill. 48; *Shirley* v. *Spencer,* 4 Gilm. 583; *Danforth* v. *Perry,* 20 Ill. App. 130; *Barnes* v. *Ludington,* 51 id. 90; *Phillips* v. *Railroad Co.* 63 Ill. 468; *Gosse* v. *Jones,* 73 id. 508.

As a general rule the court will not enforce the specific performance of a contract to form a partnership. Where the contract requires a party to give his time, skill, attention or services of any kind, an enforcement of it upon an unwilling party would require the court to manage the partnership, which alone is reason for refusing to grant relief, beside being productive of no benefit to the other party. *Express Co.* v. *Railroad Co.* 99 U. S. 191; Bates on Partnership, secs. 1009, 1011, 1012; Lindley on Partnership, (Rapalje's ed.) 794; 5 Lawson on Rights, Remedies and Practice, secs. 2609, 2609, note 4; Fry on Specific Per. secs. 1512, 1513, 1517, 824; *Buck* v. *Smith,* 29 Mich. 166.

Mr. JUSTICE CRAIG delivered the opinion of the court:

The object of the bill in this case was to enforce the specific performance of that portion of the contract which provided that appellant might purchase one-half interest in the plant and business of the *Pontiac Sentinel,* and thus compel appellee to admit appellant as a partner in the management of the plant and in conducting its business, including the selection of articles and preparing edito-

rials for the columns of the paper. If appellant were admitted to a partnership in the plant, as was decreed by the circuit court, in the management of the business and conducting of the newspaper appellant's judgment, ability and personal skill would be required. But, as we understand the authorities, the rule is well established that courts of equity will not, as a general rule, lend their aid to enforce the specific performance of contracts where personal skill and judgment in the control and management of the partnership business are required. Should a court of equity decree the specific performance of a contract providing for a partnership where personal skill, attention and services are required, as would be the case here, the enforcement of a decree in such a case upon an unwilling party would of necessity require the court to manage the partnership, which, of itself, is regarded a sufficient reason for a refusal to grant the relief. Moreover, where a partnership agreed upon is not for a definite time, but is merely at will, specific performance will be refused, for the reason that the partnership could be immediately dissolved, and a court is never required to do a void or useless thing.

We have been cited in the argument to a number of authorities bearing on the questions involved, but a reference to a few will be sufficient to sustain the view we are disposed to take in regard to those questions.

"Specific performance of a contract to form a partnership, as a general rule, will not be enforced. Where the contract requires a party to give his time, skill, attention or services of any kind, an enforcement of it upon an unwilling party would require the court to manage the partnership, which alone is reason for refusal to grant relief, besides being productive of no benefit to the other party. And this refusal of specific relief is in analogy to the policy of the law to grant dissolution for hopeless and irreconcilable dissensions." (Bates on Partnership, sec. 1009.) "If a partnership agreed upon is at will, spe-

cific performance will be refused, for the reason that the partnership could be immediately dissolved." (Ibid. sec. 1011.)

"An agreement to enter into a partnership, and, as a partner, to use and exercise personal skill and judgment in the control and management of the partnership business, is not enforceable specifically." Lindley on Partnership, (Rapalje,) p. 795, note 16, citing *Buck* v. *Smith,* 29 Mich. 166.

"As a general rule, the court will not enforce specific performance of a contract to form and carry on a partnership; and, notwithstanding some early authorities more or less to the contrary, it is clear that the court would in no case compel performance of a contract to enter into a partnership not for a 'definite term, for it might be dissolved as soon as entered upon, and the interference of the court would thus become simply nugatory." (Fry on Specific Performance,—3d Am. ed. 1884,— sec. 1512.) In *Wollensak* v. *Briggs,* 20 Ill. App. 50, and *Doyle* v. *Bailey,* 75 Ill. 418, the same principle is announced.

It will be observed that the contract relied upon here contains no provision in regard to the manner in which the business shall be conducted after the partnership shall be formed, nor is there any provision in regard to the time of its duration. If the contract were in other respects one of which a court of equity might decree specific performance, the fact that no time is provided for the duration of the partnership is fatal. The rule declared by Fry on Specific Performance on the question seems to be well sustained by the authorities.

While appellant cannot resort to a court of equity for a specific performance of the contract he is not without remedy. If he has fully complied with the terms of the contract he is entitled to bring an action at law for a breach of the same. On such action he may recover such damages as he has sustained on account of the failure of appellee to comply with the contract.

*Wilson* v. *Campbell*, 5 Gilm. 383, has been cited as an authority sustaining the position of appellant. In the decision of that case the court said (p. 402): "While the agreement (to form a partnership) remains executory, if one of them refuses to carry it into effect the only remedy of the other is by an action at law for the violation of the agreement, or by a bill in equity to enforce specifically its performance." Whether a court of equity would decree the specific performance of a contract to form a partnership was not involved in the case, and what the court may have said on that question cannot be regarded as authority controlling a case where the question was directly involved.

We think the judgment of the Appellate Court was correct, and it will be affirmed.    *Judgment affirmed.*