**In re Douglas A. KNISLEY, Debtor.**

**William Todd Drown, Chapter 7 Trustee, Plaintiff,**

v.

**Dollar Bank, FSB, et al., Defendants.**

**Bankruptcy No. 09–50532.**
**Adversary No. 09–2250.**

United States Bankruptcy Court, S.D. Ohio, Eastern Division.

Sept. 29, 2010.

Shannon M. Treynor, London, OH, for Debtor.

William Todd Drown, Mount Vernon, OH, pro se.

### MEMORANDUM OPINION AND ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

C. KATHRYN PRESTON, Bankruptcy Judge.

This matter came on for consideration of Plaintiff's Motion for Summary Judgment ("Motion") (Doc. 22), filed by William Todd Drown ("Trustee"), the Chapter 7 Trustee in the underlying bankruptcy case of Debt-

or Douglas A. Knisley ("Debtor"). The Trustee commenced this adversary proceeding against Defendants Dollar Bank, FSB ("Dollar Bank") and Fifth Third Bank ("Fifth Third") to determine the extent of the banks' mortgages on certain real property owned by the Debtor. Before the Court are the Motion, Dollar Bank's brief in opposition ("Opposition Brief") (Doc. 23) and the Trustee's reply brief (Doc. 24). The Court having considered the record and the arguments of the parties, makes the following findings of fact and conclusions of law.

By the Complaint, the Trustee sought a determination that the banks' mortgages attach to only a one-half interest in the real property and that the other one-half interest is unencumbered property of the Debtor's bankruptcy estate. After the Complaint was filed, Fifth Third and the Trustee stipulated that Fifth Third has no interest in the Property because its mortgage "was fully satisfied and paid in full." *See* Disclaimer of Interest and Stipulation (Doc. 6). Accordingly, the Trustee now seeks a determination only with respect to the mortgage held by Dollar Bank. Because there are genuine issues of material fact bearing on the extent of the Debtor's interest in the property subject to Dollar Bank's mortgage as of the date the Debtor filed his bankruptcy case (and, therefore, a question regarding the extent of the estate's interest in the Property), the Court must deny the Motion.

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the standing General Order of Reference entered in this District. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(K). Venue is properly before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## I. Standard of Review for Motions for Summary Judgment

Rule 56 of the Federal Rules of Civil Procedure, made applicable to adversary proceedings by Bankruptcy Rule 7056, provides that summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c)(2). The party seeking summary judgment bears the initial burden of "informing the ... court of the basis for its motion, and identifying those portions of the [record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

If the movant satisfies this burden, the nonmoving party must then "set out specific facts showing a genuine issue for trial." Fed.R.Civ.P. 56(e)(2). The mere allegation of a factual dispute is not sufficient to defeat a motion for summary judgment; to prevail, the non-moving party must show that there exists some genuine issue of material fact. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The court must deem as true the nonmoving party's evidence and must view all justifiable inferences in a light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Anderson*, 477 U.S. at 255, 106 S.Ct. 2505.

The Sixth Circuit has articulated the following standard to apply when evaluating a motion for summary judgment:

[T]he moving [party] may discharge its burden by "pointing out to the ... court ... that there is an absence of evidence to support the nonmoving party's case."

The nonmoving party cannot rest on its pleadings, but must identify specific facts supported by affidavits, or by depositions, answers to interrogatories, and admissions on file that show there is a genuine issue for trial. Although we must draw all inferences in favor of the nonmoving party, it must present significant and probative evidence in support of its complaint. "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]."

*Hall v. Tollett,* 128 F.3d 418, 422 (6th Cir.1997) (internal citations omitted). A material fact is one whose resolution will affect the determination of the underlying action. *Tenn. Dep't of Mental Health & Mental Retardation v. Paul B.,* 88 F.3d 1466, 1472 (6th Cir.1996). An issue is genuine if a rational trier of fact could find in favor of either party on the issue. *Schaffer v. A.O. Smith Harvestore Prods., Inc.,* 74 F.3d 722, 727 (6th Cir.1996) (citation omitted). "The substantive law determines which facts are 'material' for summary judgment purposes." *Hanover Ins. Co. v. American Eng'g Co.,* 33 F.3d 727, 730 (6th Cir.1994) (citations omitted). However, determinations of credibility, weight of the evidence, and legitimate inferences from the facts remain the province of the jury. *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505.

In determining whether each party has met its burden, the court must keep in mind that "[o]ne of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses...." *Celotex,* 477 U.S. at 323–24, 106 S.Ct. 2548. If otherwise appropriate, summary judgment may also be entered for a nonmoving party. *K.E. Resources, Ltd. v. BMO Fin. Inc. (In re Century Offshore Mgmt. Corp.),* 119 F.3d

409, 412 (6th Cir.1997); *see also Celotex,* 477 U.S. at 326, 106 S.Ct. 2548 ("[D]istrict courts are widely acknowledged to possess the power to enter summary judgments *sua sponte,* so long as the losing party was on notice that she had to come forward with all of her evidence.").

## II. Findings of Fact

Based upon the record, the Court makes the following findings of fact:

At the center of this adversary proceeding is real property located at 8894 State Route 207 NE, Mount Sterling, Ohio ("Property"). On April 2, 2004, the Debtor and Amy Herron ("Herron"): (1) obtained title to the Property by virtue of a Survivorship Deed from Douglas Wallace and Tamara Wallace ("Deed"); and (2) executed and delivered to Knight Wagner Mortgage Co., Inc. ("Knight Wagner") a purchase-money mortgage on the Property ("April Mortgage"). The Debtor's wife, Marla, signed the April Mortgage solely to release her rights of dower in the Property. On the same day, Knight Wagner assigned the April Mortgage to Dollar Bank ("April Assignment"). The April Assignment states that the April Mortgage was executed by "Douglas A. Knisley, married, Marla L Knisley, his wife signing solely to release her dower rights, and Amy L. Herron, unmarried." The Deed, the April Mortgage and the April Assignment were filed for record on May 5, 2004 in the Office of the Fayette County Recorder ("Recorder's Office").

Approximately seven months later, on December 3, 2004, (1) the Debtor and Marla (again signing solely to release her dower rights) executed and delivered the mortgage that is the subject of this adversary proceeding to Knight Wagner ("Mortgage"); and (2) Knight Wagner assigned the Mortgage to Dollar Bank ("December

Assignment"). Only the Debtor and Marla signed the Mortgage; Herron's name does not appear anywhere in the Mortgage. The Mortgage and the December Assignment were filed for record in the Recorder's Office on December 16, 2004. The December Assignment expressly states that the Mortgage was "executed by Douglas A. Knisley, married, and Marla L. Knisley, his wife, signing solely to release her dower rights." The December Assignment does not reference Herron.

Proceeds of the Mortgage were used to satisfy the April Mortgage. On December 24, 2004, Dollar Bank executed a satisfaction of mortgage ("Satisfaction of Mortgage") stating that the April Mortgage "is hereby satisfied and discharged." The Satisfaction of Mortgage was filed for record in the Recorder's Office on January 6, 2005.

On January 22, 2009 ("Petition Date"), the Debtor filed a Petition for Relief under Chapter 7 of the Bankruptcy Code. More than a year after the Petition Date, on March 8, 2010, Herron (then known as Amy Green) and her husband, Jason Green, executed a quit claim deed, conveying their rights to and interest in the Property to the Debtor ("Quit Claim Deed"). The Quit Claim Deed was filed for record in the Recorder's Office on June 16, 2010.

### III. Arguments of the Parties

The Trustee contends that, because the Debtor was the owner of only an undivided one-half interest in the Property when he executed the Mortgage and therefore could not grant a mortgage that encumbered more than the one-half interest he owned, and because Herron did not sign the Mortgage, the Mortgage attaches to and encumbers only the Debtor's one-half interest and the other one-half interest is unencumbered property of the Debtor's

bankruptcy estate. Dollar Bank's response is two-fold. First, Dollar Bank argues that there is no basis for the relief requested by the Trustee. Second, Dollar Bank contends that, even if there were a basis for the Trustee's requested relief, because the Mortgage refinanced a mortgage signed by Herron and because Herron has conveyed the Property to the Debtor by the Quit Claim Deed, the equitable doctrines of estoppel by deed, equitable subrogation and equitable restoration prevent the Trustee from obtaining the relief he seeks.

### IV. Conclusions of Law

#### A. The Relief Sought by the Trustee Has a Basis in the Law.

■ Dollar Bank's contention that there is no basis for the relief requested by the Trustee is incorrect. The Trustee seeks a determination of the extent of the Mortgage. The term "extent" refers to "the scope of the property encompassed by or subject to the lien." *In re Beard*, 112 B.R. 951, 955 (Bankr.N.D.Ind.1990); *see also In re Hudson*, 260 B.R. 421, 433 (Bankr. W.D.Mich.2001). In the instant adversary proceeding, the Mortgage was executed only by the Debtor and his then wife, Marla, not by Herron. At issue, then, is to what interest in the Property the Mortgage extends. As the Court held in *Stubbins v. HSBC Mtg. Servs, Inc. (In re Slack)*, 394 B.R. 164 (Bankr.S.D.Ohio 2008), a trustee may seek a determination of the extent of a mortgage based on the fact that only the debtor signed the mortgage:

> The Ohio Revised Code provides that "every grant, conveyance, or mortgage of lands, tenements, or hereditaments shall convey or mortgage the *entire interest* which the grantor could lawfully grant, convey, or mortgage, unless it clearly appears by the deed, mortgage,

or instrument that the grantor intended to convey or mortgage a less estate." Ohio Rev.Code § 5301.02 (emphasis added). *See Laymon v. Bennett*, 75 Ohio App. 233, 61 N.E.2d 624, 626 (1944) (The Grantor was "not limited to any set phrase in expressing the intention [to convey her estate]. Whatever language she chose to use would convey the title she had in the described real estate . . . ."). It is axiomatic that a "mortgagor can only bind the estate or property he has, and 'a mortgagee can take no greater title than that held by the mortgagor.'" *Stein v. Creter (In re Creter)*, 2007 WL 2615214, *4 (Bankr. N.D.Ohio Sept.5, 2007) (quoting Ohio Jur.3d Mortgages and Deeds § 136). That is, the Mortgage encumbers only that interest in the Property held by the Debtor when she executed the Mortgage.

The previous owners conveyed the Property by Warranty Deed to Chad Inman and Michelle Slack, with rights of survivorship. *See* Ohio Rev.Code § 5302.20(A) ("[I]f any interest in real property is conveyed or devised to two or more persons for their joint lives and then to the survivor or survivors of them, those persons hold title as survivorship tenants, and the joint interest created is a survivorship tenancy.") "Each survivorship tenant holds an equal share of the title during their joint lives . . . ." Ohio Rev.Code § 5302.20(B). Ohio Revised Code § 5302.20(C)(2) provides that a conveyance from a survivorship tenant "does not alter the interest in the title of any of the other survivorship tenants who do not join in the conveyance." At the time the Mortgage was executed, Debtor and Inman each held an undivided one-half interest in the Property. Therefore, when Debtor mortgaged her own one-half interest in the Property, she did so without affecting the one-half interest then held by Inman. As Debtor could not lawfully convey an interest greater than what she herself possessed at the time, the Mortgage extends only to the one-half interest in the Property that she held on the date of execution of the Mortgage. *Slack*, 394 B.R. at 170–171. This adversary proceeding is in the nature of an action seeking a declaratory judgment and in pursuit of the Trustee's duty to investigate, determine the existence of and liquidate assets of the bankruptcy estate.

## B. Dollar Bank's Equitable Doctrines are Unavailing Against the Trustee.

Dollar Bank asserts that, under the doctrine of estoppel by deed, a mortgagor who obtains title after granting a mortgage is estopped from preventing the after-acquired title from inuring to the benefit of the mortgagee and that, therefore, "once the [D]ebtor acquired Ms. Herron's half interest through the Quit Claim Deed, the after acquired title inured to the benefit of Dollar Bank." Opposition Brief at 3. Dollar Bank also contends that, under the doctrine of equitable subrogation, "Dollar Bank is entitled to stand in the shoes of its prior mortgage which was executed by the [D]ebtor and Ms. Herron." Opposition Brief at 4. Dollar Bank finally asserts that it also is protected by the doctrine of equitable restoration. Without so holding, the Court will accept for the sake of argument that all of that could be true as between Dollar Bank and the Debtor (who is not a party to this adversary proceeding). Dollar Bank, however, provides no authority for applying any of these equitable doctrines to a bankruptcy trustee, and the Court has serious doubts that they would apply to the Trustee. *Cf. XL/Datacomp, Inc. v. Wilson (In re Omegas Group, Inc.)*, 16 F.3d 1443, 1452 (6th Cir.

1994) ("The equities of bankruptcy are not the equities of the common law."); *Bavely v. Huntington Nat'l Bank (In re Cowan)*, 273 B.R. 98, 106–07 (6th Cir. BAP 2002) ("[E]ven if the doctrine [of equitable estoppel] did apply to give Fifth Third a property interest ... [t]he Trustee, as a bona fide purchaser of the property without notice of the mortgage, is still entitled to avoid any such interest."), *aff'd*, 70 Fed. Appx. 797 (6th Cir.2003). Moreover, even if these doctrines could be used against the Trustee, the facts in the instant adversary proceeding would not warrant their application here given the lack of any evidence that Dollar Bank failed to obtain a mortgage from Herron (or the assignment of such a mortgage) due to the fault of anyone other than itself. *Cf. Cowan*, 273 B.R. at 107 ("The availability of equitable subrogation depends upon the facts and circumstances of each particular case.... In order to entitle one to subrogation, [a party's] equity must be strong and [its] case clear.... Fifth Third could have obtained a first mortgage position ... Fifth Third does not point to anything in the trial record that explains its failure to do so or shows that [parties] who were unconnected to the Fifth Third transaction, were unjustly enriched by it. Under these facts, Fifth Third is not entitled to [use the doctrine of equitable subrogation.]") (citations and internal quotation marks omitted). *See also Superior Bank, FSB v. Boyd (In re Lewis)*, 398 F.3d 735, 747 (6th Cir.2005) (declining to apply the doctrine of equitable subrogation in part on the ground that the defendant's "own negligence led to the dilemma created by the debtor's filing for bankruptcy.").

## C. The Court Cannot Grant Summary Judgment in Favor of the Trustee.

■ What makes this adversary proceeding different from *Slack* (in which the debtor owned the entire interest in the mortgaged property as of the petition date) and prevents the Court from entering summary judgment in favor of the Trustee is that, as of the Petition Date in the instant adversary proceeding, the Debtor owned only a one-half interest in the Property and Herron owned the other one-half interest. In an apparent attempt to address the complications raised by this scenario, the Trustee alleged in the Complaint as follows:

> In late 2004 but before the execution of the Defendants' mortgages, Debtor Douglas A. Knisley had a verbal, executory contract with Non-party Amy L. Herron for the conveyance of the one-half interest of Non-party Amy L. Herron in and to the real estate to Debtor based on full performance of certain obligations by Debtor. Non-party Amy L. Herron has agreed to voluntarily convey her one-half interest in and to the real estate directly to the bankruptcy estate to fully perform her obligations under the verbal, executory contract with Debtor and acknowledges full performance of Debtor's obligations under the verbal, executory contract. This verbal, executory contract is property of the bankruptcy estate pursuant to 11 U.S.C. 541.

Complaint ¶¶ 12–14.

In its Supplemental Answer (Doc. 8), Dollar Bank denied each of these allegations and, in addition, asserted the Statute of Frauds. Thus, there are genuine issues of material fact bearing on the issue of whether or not the Debtor had an interest in Herron's one-half interest in the Property as of the Petition Date. If the Debtor had such an interest based on the alleged agreement with Herron or on some other basis, then such interest could be property of the estate under § 541(a) of the Bankruptcy Code as a "legal or equitable inter-

est[ ] of the debtor in property as of the commencement of the case." *See First Community Bank v. In re E.M. Williams & Sons, Inc. (In re E.M. Williams & Sons, Inc.)*, 2009 WL 1321034 at *3 (Bankr. E.D.Va. May 8, 2009) ("Both the Plaintiff and the Trustee admit that the Partnership had agreed pre-petition to deed the Real Property to the Debtor. . . . The Court finds that there is sufficient evidence to conclude, as the Plaintiff and the Trustee both stipulate, that the Debtor had an equitable interest in the Real Property, which interest became property of the Debtor's estate on the Petition Date pursuant to Bankruptcy Code § 541(a)(1)."), *aff'd,* 2010 WL 1279094 (E.D.Va. Mar.30, 2010). Depending on the circumstances, this could be true even if the agreement was oral. *See Skiba v. Sipple (In re Sipple)*, 400 B.R. 475, 479 (Bankr.W.D.Pa.2009) (holding that "[t]o establish an exception to the Statute of Frauds, it must first be shown that an agreement to convey was actually reached," that "[a]n oral contract must be established by clear and convincing evidence" and that the Chapter 7 trustee failed to establish that there was any parol contract for conveyance of property from debtor's parents to the debtor).

On the other hand, if the Debtor did not have any interest in Herron's one-half interest in the Property as of the Petition Date, there might be no basis in § 541 for finding that the interest she conveyed to the Debtor after the Petition Date is property of the estate. If the interest is not property of the estate but rather is an interest owned by the Debtor, then the issue of who is entitled to the other one-half of the proceeds of the sale of the

Property[1] ultimately is an issue between the Debtor and Dollar Bank, not the Trustee and Dollar Bank.

## V. Conclusion

Based on the record as it currently exists, the Court cannot determine the extent of the bankruptcy estate's interest in the Property. "A court should not grant a summary judgment until the facts have been sufficiently developed to enable it to decide with reasonable certainty that it is making a correct determination of the law." *Local Union No. 1423, Glaziers v. P.P.G. Indus., Inc.*, 378 F.Supp. 991, 1000 (N.D.Ind.1974). For the reasons discussed above, the Motion is **DENIED**. The Court will set this adversary proceeding for a status conference pursuant to a separate notice.

**IT IS SO ORDERED.**

---

1. On March 22, 2010, the Court entered the Agreed Order Permitting Trustee to Sell Real Property Located at 8894 S.R. 207, Mount Sterling Ohio and Other Relief (Doc. 19). On June 18, 2010, the Trustee filed a report of sale with respect to the Property (Doc. 50 in Case No. 09–50532).